# EXHIBIT 1

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY,
FLORIDA

ANTONIO SISCA,                                        CASE NO.

      Plaintiff,

vs.

HAL MARITIME, LTD and
PRINCESS CRUISE LINES LTD. (Corp.)

      Defendant.

_____/

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ANTONIO SISCA, sues Defendants, HAL Maritime, Ltd and Princess Cruise

Lines, Ltd. (Corp) herein after "Princess Cruise Lines" and in support thereof alleges as follows:

1.      This is an action for damages in excess of the jurisdictional limits of this Court.

2.      At all times material hereto, Defendants HAL, Maritime, Ltd. and Princess Cruise Lines
Ltd:

    a.      Committed one or more acts stated in Florida Statutes § 48.193; and

    b.      had agents or representative in this county. Indeed, Defendant HAL Maritime, Ltd.
at all times material owned, operated, managed, maintained and/or controlled the
passenger cruise vessel Vendaam, which sails out of Port Everglades, Florida.
Similarly, Defendant Princess Cruise Lines, Ltd. at all times material owned,
operated, managed, maintained and/or controlled passenger cruise vessels in
Florida ports, has an agent, representative and parent corporation in Florida

3.      Defendants are subject to the jurisdiction of the Courts of this state, and, particularly, the
instant Court.

4.    The causes of action asserted in this Complaint arise under the Jones Act and General
      Maritime Law of the United States.

5.    At all times material hereto, Plaintiff was a twenty-eight-year-old Italian national
      professional dancer hired by HAL, Maritime Ltd to work as a "cast member" aboard the
      M/V Vendaam.

6.    At all times material hereto, Plaintiff was a Jones Act seaman and HAL Maritime, Ltd was
      Plaintiff's Jones Act employer.

7.    As Plaintiff's Jones Act employer, HAL had the fundamental duty of exercising reasonable
      care in providing Plaintiff a reasonably safe means of repatriating upon completing his
      employment contract.

8.    As Plaintiff's Jones Act employer, HAL also owed Plaintiff the fundamental duty of
      providing Plaintiff prompt and adequate medical treatment for any injury illness
      manifesting aboard the vessel.

9.    At all times material hereto, Defendant Princess Cruise Lines, Ltd was the owner and
      operator of the vessel Regal Princess. As vessel owner and operator, Defendant Princess
      owed Plaintiff, a seaman, the fundamental and non-delegable duty of providing him
      prompt and adequate medical treatment for any injury illness manifesting aboard their
      vessel.

10.   At all times material hereto, Plaintiff's employment contract with HAL commenced on
      July 26, 2019 and expired on April 22, 2020. Attached as Composite Exhibit "1" is a true
      and correct copy of Plaintiff's "Seagoing Employment Agreement" and "Seagoing
      Employment Agreement -Terms and Conditions May 1, 2019 Version" ("SEA").

11. The SEA -Terms and Conditions May 1, 2019 Version" contains an arbitration clause which purports to apply to "Any disputes whatsoever relating to or in any way arising out of this Agreement or your service on board a ship." Exhibit "1".

12. ¶ 1. A. of the "SEA -Terms and Conditions" states the terms and conditions extend only to periods "...*in which you are in active service sailing on a ship in an officer or crewmember capacity (the Employment Term)... you are not in the service of us or any of the ships owned by our affiliates during leave periods or while you are in transit to or from any ship.*" Id.

13. A plain reading of the employment contract's terms evidences a mutual intent between the parties to have the contract terms extend only to periods in which Plaintiff was in active service of their ships in a crewmember capacity during "the Employment Term" and not to periods when Plaintiff was not "in active service" or while he was "in transit to or from any ship".

14. Plaintiff's accident and injuries occurred on April 23, 2020 or one day after the "Employment Term" expired, and while Plaintiff was "in transit to a ship".

15. Because Plaintiff's accident and claim arose after the "the Employment Term" expired and while "*in transit to or from any ship*" the terms of the SEA including the arbitration clause are inapt to Plaintiff's claims.

16. On or March 14, 2020, the U.S. Centers for Disease Control "CDC" announced a no sail order for cruise ships due to the Covid 19 pandemic.

17. On or about March 18, 2020 the Vendamm disembarked all its passengers and most crewmembers in Port Everglades, Florida.

18.   On or about March 18th 2020 Plaintiff requested to be disembarked in Ft. Lauderdale and repatriated to Italy via NY La Guardia airport which at that time was the only Italian government authorized international airport in the east coast of the U.S. allowed to fly into Italy.

19.   Defendant, HAL, however refused Plaintiff's request to be disembarked in Port Everglades and instead kept him aboard the vessel against his will anchored in the middle of the Atlantic until April 23, 2020.

20.   On or about April 23, 2020, the CDC issued guidelines to the cruise companies describing how they could repatriate people safely using private transportation while the CDC reviewed their plans. In addition, the interim CDC order required cruise lines officials to provide a signed attestation guaranteeing crew members would be repatriated safely by non-commercial travel.

21.   According to CDC spokesperson Jasmine Reed, however, " Holland America nor Carnival provided the attestation despite requests from CDC....The refusal of Holland America and Carnival executives to attest to safe disembarkation conditions is the reason why CDC did not approve disembarkation for the Oosterdam crew." Taylor Dolven, Miami Herald, April 30, 2020.

22.   Despite the restrictions imposed on debarkation of crewmembers in U.S. ports, the CDC, however, continued to "support urgent medical evacuations of crew in U.S. waters and ports, either by air or land ambulance. Emergency medical evacuations should be coordinated with U.S. Coast Guard and the receiving medical facility and do not require CDC approval. CDC has notified all cruise lines as well as federal, state, and local partners that the No Sail Order of April 15 will not prevent crew members from receiving

emergency medical care." National Center for Immunization and Respiratory Diseases (NCIRD), Division of Viral Diseases.

23.     On April 22, 2020 Plaintiff's employment contract with HAL ended by its own expiring terms.

24.     On April 23, 2020, the Vendaam began deploying lifeboats to transfer European crewmembers to Princess Cruise Lines' vessel Regal Princess for repatriation out of Southampton, U.K.

25.     Due to the high winds and rough sea conditions, however, the lifeboats violently rolled from side to side while sea water from the crashing waves sloshed inside of the lifeboats.

26.     On April 23, 2020 in transit to the Regal Princess from the Vendaam, Plaintiff twice slipped and violently fell on his lower back while trying to assist another crewmember who became seasick from the rough seas.

27.     On April 24th, 2020 Plaintiff reported to the Regal Princess' ship's doctors experiencing severe back pain and numbness on his left foot. After examining Plaintiff, the ship's doctor noted Plaintiff suffered a back injury directly caused after a fall and prescribed him pain medication and declared him fit "to return to normal working duties on next shift".

28.     On April 25, 2020 Plaintiff was seen again at the ship's medical facility where he reported increased paresthesia running from the back of his left leg to his left heel and was noted to have a positive straight leg on his left causing pain and paresthesia.

29.     On April 26, 2020 Plaintiff reported experiencing electric shocks gown down his legs while walking and tingling of his leg when not walking. Plaintiff's neurological symptoms became progressively worse with each passing day.

30.  On April 27, 2020 Plaintiff was referred by the Regal Princess to a shoreside hospital in Bermuda which noted Plaintiff had a history of falling and experiencing leg numbness as well as bowel and bladder incontinence for past three days.

31.  Despite the clear indications of serious lower back and corresponding nerve injuries requiring emergency surgery, the physicians at the Bermuda hospital found "Mr. Sisca has no neurological process account for his ongoing back pain" and recommended he follow up with an orthopedic spine specialist upon return home and found he was fit for travel by air.

32.  Rather than fly Plaintiff to Italy from Bermuda so he could be seen by a spine specialist sooner, Defendant once again kept Plaintiff aboard the Regal Princess to continue its ten-day transatlantic crossing to Southampton, U.K.

33.  Over the course of the ten-day transatlantic voyage, Plaintiff's neurological picture became more dire and so did his desperate pleas for medical treatment.

34.  Throughout the ten-day transatlantic journey, however, all the ship's doctors did was prescribe Plaintiff copious amounts of morphine and other strong opiate pain medications while either negligently or grossly negligently missing or ignoring the glaring signs of serious neurological injuries and need for emergency spine and nerve decompression surgery.

35.  At all times material hereto, Plaintiff's medical care was being managed and coordinated by Holland America and Princess Cruise Lines' parent corporation Carnival Corporation out of Miami, Florida.

36.  By the time the Regal Princess arrived Southampton on May 5, 2020, Plaintiff had already become paraplegic and was suffering from complete urinary and bowel incontinence.

37. As soon as the vessel arrived, Plaintiff was sent unaccompanied by ambulance to the public hospital in Southampton where he was left unattended for hours in excruciating pain, starving, and covered in feces from the waist down and vomit all over his upper body.

38. At the U.K. hospital Plaintiff was diagnosed with "functional neurology secondary to back pain" and noted to be unable walk or feel his legs and suffering from bowel and bladder incontinence.

39. On May 8, 2020 Plaintiff was discharged from the U.K. hospital and finally repatriated to Italy.

40. On May 9, 2020 Plaintiff was admitted for emergency spinal surgery with a diagnosis of cauda equina syndrome with "almost complete loss of strength and mobility of the lowe limbs as well as urinary and fecal incontinence."

41. CT Scan of Plaintiff's spine showed a fracture of the posterior arch L4 causing spinal instability and narrowing of the spinal canal and so Plaintiff was recommended to undergo emergency spinal surgery.

42. On May 10, 2020, or 20 days after Plaintiff first reported uncontrollable back pain and serious neurological injuries requiring emergency treatment, Plaintiff underwent a - "circumferential L4-L5 arthrodesis with screws and interbody cage + L4 posterior arch removal for decompression."

43. Post operatively, Plaintiff remains wheelchair bound in a paraplegic state unable to control his bladder or bowel movements.

44. As of the filing of this complaint, Plaintiff continues to undergo medical treatment and has not reached maximum medical improvement.

## COUNT I
## HAL MARITIME LTD- JONES ACT NEGLIGENCE

Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein, and further

alleges:

45.    At all times material hereto, Defendant HAL Maritime Ltd. owed Plaintiff the duty of

exercising reasonable care in providing a reasonably safe means of repatriation upon

completion of his employment contract.

46.    Defendant HAL's obligation to repatriate Plaintiff in a reasonably safe manner is a

maritime legal obligation existing independently of any employment contract between

the vessel owner and the seafarer.

47.    As Plaintiff's Jones Act employer, Defendant HAL Maritime, Ltd. owed Plaintiff the

non delegable duty of providing him with prompt and adequate medical treatment for

any injury or illness manifesting while Plaintiff was aboard their vessel.

48.    Defendant HAL Maritime Ltd., breached the fundamental duty owed to Plaintiff to

exercise reasonable care in providing him with a reasonably safe means of repatriation,

including, without limitation as follows:

    a)    by failing to disembark Plaintiff from the Vendaam on March 18, 2020 in

Port Everglades, Fl along with the rest of crewmembers so Plaintiff could

safely repatriate by air from Port Everglades, Fl

    b)    by negligently transferring Plaintiff to the Regal Princess using a lifeboat in

rough and dangerous sea conditions thus causing Plaintiff to fall and injure

his back inside the lifeboat

    c)    by failing to have properly trained and skilled workers experienced in

navigating a lifeboat in rough and dangerous seas

      d)      by not postponing the vessel transfer to another day or time in which sea conditions were more favorable for a safe transit

      e)      by not having another mate aboard the lifeboat in addition to the lifeboat captain to assist other crewmembers who became seasick during the transfer

49.    As a direct and proximate result, Plaintiff suffered harm, including, without limitation, serious bodily injuries, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and/or treatment, loss of earnings, loss of ability to earn money, loss of room and board and meals and other fringe benefits available to Plaintiff as a member of the vessel's crew. One or more of the losses are permanent and/or continuing, and Plaintiff will suffer the loss(es) in the future.

    **WHEREFORE,** the Plaintiff demands judgment under the Jones Act against the Defendant, HAL MARITIME LTD. together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

## COUNT II

### HAL MARITIME LTD. JONES ACT NEGLIGENCE-FAILURE TO PROVIDE PLAINTIFF PROMPT AND ADEQUATE MEDICAL TREATMENT

50.    As Plaintiff's Jones Act employer, Defendant HAL Maritime, Ltd. owed Plaintiff the fundamental and non-delegable duty of providing him with prompt and adequate medical treatment for any injury or illness manifesting while Plaintiff was aboard their vessel.

51.    Defendant breached its fundamental and non-delegable legal duty to provide Plaintiff
       prompt and adequate medical treatment for the injuries suffered by Plaintiff on April 23,
       2020 aboard Defendant's lifeboat including, without limitation as follows:

    a)    by negligently and/or grossly negligently relying on physicians lacking or
       possessing the requisite knowledge, training, or experience to adequately diagnose
       and/or treat Plaintiff's medical conditions and negligently /or grossly negligently
       failing to timely refer Plaintiff to undergo proper diagnostic tests, or to recommend
       that further tests be performed based on the continued steady decline of Plaintiff's
       neurological and urological condition following the April 23, 2020 accident aboard
       the lifeboat

    b)    by negligently and/or grossly negligently failing to follow appropriate guidelines
       concerning the care and medical supervision of a crewmember in Plaintiff's
       condition; and/or

    c)    failing to conduct proper physical examinations on the Plaintiff and/or

    d)    by negligently and/or grossly negligently failing to timely provide Plaintiff
       emergency medical care and treatment and/or recommend adequate follow-up
       medical care to Plaintiff; and/or by negligently and/or grossly negligently failing to
       consult with other specialized physicians or health care providers regarding the
       care and treatment rendered to Plaintiff, including as to appropriate evaluation and
       diagnosis; and/or

    e)    by negligently and/or grossly negligently failing to air vac Plaintiff from the
       vessel to a facility in South Florida specializing in spine injures and
       paralysis

f)    by negligently and/or grossly negligently failing to airlift Plaintiff from the vessel to any facility on the west side of the Atlantic which specializes in spinal injuries and paralysis and/or

g)    Negligently and/or grossly negligently failing to airlift Plaintiff from Bermuda to his home country to receive emergency care and treatment and/or

h)    by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

52.    As a direct and proximate result, Plaintiff suffered harm, including, without limitation, bodily injury, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and/or treatment, loss of earnings, loss of ability to earn money, loss of ability to obtain proper health insurance and/or aggravation of a previously existing condition. One or more of the losses are permanent and/or continuing, and Plaintiff will suffer the loss(es) in the future.

**WHEREFORE**, the Plaintiff demands judgment under the U.S. General Maritime law against the Defendant, HAL MARITIME LTD together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

**COUNT III HAL MARITIME LTD**
**U.S. GENERAL MARITIME LAW CLAIM FOR FAILURE TO PROVIDE PROMPT AND ADEQUATE MAINTENANCE AND CURE**

Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein, and further alleges:

53.   Under the U.S. General Maritime Law, Plaintiff, as a seaman, is entitled to receive prompt and adequate medical treatment for any injury or illness manifesting while in the service of the vessel until he is declared to have reached maximum possible cure. Maintenance and cure is an ancient duty under the law of admiralty that arises against a shipowner in favor of a seaman who becomes ill, injured, or incapacitated, or whose condition becomes aggravated or enhanced for any reason, at least until the time that the seaman has achieved maximum medical recovery. *Vaughan v. Atkinson, 369 U.S. 527, (1962).* Accordingly, with the combined object of encouraging marine commerce and assuring the well-being of seamen, maritime nations uniformly have imposed broad responsibilities for their health and safety upon vessel owners and Jones Act employers, such as the Defendants. Maintenance and cure provide a seaman, who is injured or ill while in the service of the vessel, medical care and treatment, and the means of maintaining him or herself, while recuperating. A seaman, like Plaintiff, is entitled to maintenance and cure until he or she reaches maximum possible cure, irrespective of whether the illness or injuries were received by negligence or accident.

54.   At all times material, Defendant was a Jones Act Employer and vessel owner and had a fundamental absolute and non-delegable duty under the U.S. General Maritime Law to make provision to Plaintiff of prompt and adequate maintenance and cure in a non-negligent manner. Defendant HAL is liable under the Jones Act and U.S. General Maritime Law in damages for harm resulting in whole or in part from the negligent failure of its officers, agents, or employees to make provision of prompt and adequate maintenance and

cure. Under the Jones Act, a simple showing of some negligence on the part of the employer which played any part, even the slightest, in producing harm to the Plaintiff, creates a jury question on the issue of negligence. Defendant HAL is liable for damages under the U.S. General Maritime Law if it fails to provide or pay a seaman prompt and adequate maintenance or fails to provide prompt and adequate maintenance and cure. Defendant, HAL is liable for even greater damages if its failure to provide or pay a seaman prompt and adequate maintenance or failure to provide prompt and adequate cure is willful, arbitrary, capricious, and in callous disregard of the rights of a seaman. Furthermore, Defendant HAL, is liable if there was negligence in the ministration – essentially the act of supplying or furnishing – of maintenance and cure. There are, indeed, two alternative ways in which an employer is liable for negligence in the ministration of maintenance and cure: (1) If the Defendant was negligent in selecting and/or relying upon one or more of the physicians and health care providers who treated the seaman; or (2) one or more of the physicians and health care providers who treated the seaman was/were negligent in the treatment of the seaman. Relative to the second of these ways, Defendant HAL is liable for acts of negligence by any of said physicians and health care providers if any of said physicians or health care providers did not exercise the degree of care and skill of the averaged qualified practitioner of the art and science of medicine. Here, Defendant's shipboard physicians as well as the shoreside physicians Defendant referred Plaintiff to in Bermuda and Southampton breached the standard of care of the average qualified practitioner of the art and science of medicine by failing to diagnose and/or treat and/or timely refer Plaintiff to a qualified medical expert for diagnosis and adequate medical treatment to Plaintiff, inasmuch as Plaintiff was kept aboard the vessel and treated with

pain medicines instead of providing him the required course of medical treatment which caused an aggravation of all his injuries.

55.    Defendant's shipboard and the shoreside physicians Plaintiff was referred to by Defendant in Bermuda and Southampton breached the standard of care and skill of the averaged qualified practitioner of the art and science of medicine and thus failed to provide Plaintiff with prompt and adequate maintenance and cure, including, without limitation as follows:

a.      by negligently and/or grossly negligently failing to possess the requisite knowledge, training, or experience to adequately diagnose and treat Plaintiff's medical conditions.

b.      by negligently and/or grossly negligently failing to timely refer Plaintiff to undergo proper diagnostic tests, or to recommend that further tests be performed based on the unresolved complaints of back and wrist pains; and/or

c.      by negligently and/or grossly negligently failing to follow appropriate guidelines concerning care and supervision of a crewmember in Plaintiff's condition; and/or

d.      Failing to obtain proper physical examinations on the Plaintiff.

e.      by negligently and/or grossly negligently failing to provide and/or recommend adequate follow-up care to Plaintiff; and/or

f.      by negligently and/or grossly negligently failing to consult with other physicians or health care providers in regard to the care and treatment rendered to Plaintiff, including as to appropriate evaluation and diagnosis; and/or

g.      by negligently and/or grossly negligently failing to prescribe, order, and/or perform indicated diagnostic procedures that would have revealed Plaintiff's true condition and dictated a different course of care and treatment for Plaintiff's; and/or

h.     by negligently and/or grossly negligently failing to request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures to prevent the condition from remaining untreated and allowing it to worsen; and/or

i.     by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

j.     by negligently and/or grossly negligently relying on physicians lacking or possessing the requisite knowledge, training, or experience to adequately diagnose and/or treat Plaintiff's medical conditions and negligently /or grossly negligently failing to timely refer Plaintiff to undergo proper diagnostic tests, or to recommend that further tests be performed based on the continued steady decline of Plaintiff's neurological and urological condition following the April 23, 2020 accident aboard the lifeboat

k.     by negligently and/or grossly negligently failing to follow appropriate guidelines concerning the care and medical supervision of a crewmember in Plaintiff's condition; and/or

l.     failing to conduct proper physical examinations on the Plaintiff and/or

m.     by negligently and/or grossly negligently failing to timely provide Plaintiff emergency medical care and treatment and/or recommend

n.     adequate follow-up medical care to Plaintiff; and/or by negligently and/or grossly negligently failing to consult with other specialized physicians or health care

providers regarding the care and treatment rendered to Plaintiff, including as to appropriate evaluation and diagnosis; and/or

o.   by negligently and/or grossly negligently failing to air vac Plaintiff from the vessel to a facility in South Florida specializing in spine injures and paralysis

p.   by negligently and/or grossly negligently failing to airlift Plaintiff from the vessel to any facility on the west side of the Atlantic which specializes in spinal injuries and paralysis and/or

q.   negligently and/or grossly negligently failing to airlift Plaintiff from Bermuda to his home country to receive emergency care and treatment and/or by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

56.   As a direct and proximate result, Plaintiff suffered harm, including, without limitation, bodily injury, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and/or treatment, loss of earnings, loss of ability to earn money, loss of ability to obtain proper health insurance and/or aggravation of a previously existing condition. One or more of the losses are permanent and/or continuing, and Plaintiff will suffer the loss(es) in the future.

**WHEREFORE,** the Plaintiff demands judgment under the U.S. General Maritime law against the Defendant, HAL MARITIME LTD together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

## COUNT IV

### PRINCESS CRUISE LINES, LTD
### U.S. GENERAL MARITIME LAW CLAIM FOR FAILURE TO PROVIDE PROMPT AND ADEQUATE MAINTENANCE AND CURE

Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein, and further alleges:

57.     Under the U.S. General Maritime Law, Plaintiff, as a seaman, is entitled to receive prompt and adequate medical treatment from Princess Cruise Lines, Ltd. for any injury or illness manifesting while in the service of the vessel until she is declared to have reached maximum possible cure. Maintenance and cure is an ancient duty under the law of admiralty that arises against a shipowner in favor of a seaman who becomes ill, injured, or incapacitated, or whose condition becomes aggravated or enhanced for any reason, at least until the time that the seaman has achieved maximum medical recovery. Vaughan v. Atkinson, 369 U.S. 527, (1962). Accordingly, with the combined object of encouraging marine commerce and assuring the well-being of seamen, maritime nations uniformly have imposed broad responsibilities for their health and safety upon vessel owners and Jones Act employers, such as the Defendants. Maintenance and cure provide a seaman, who is injured or ill while in the service of the vessel, medical care and treatment, and the means of maintaining him or herself, while recuperating. A seaman, like Plaintiff, is entitled to maintenance and cure until he or she reaches maximum possible cure, irrespective of whether the illness or injuries were received by negligence or accident.

58.     At all times material, Defendant was the owner of the vessel Regal Princess and had a fundamental, absolute, and non-delegable duty under the U.S. General Maritime Law to make provision to Plaintiff of prompt and adequate maintenance and cure in a non-

negligent manner. Defendant Princess is liable under the U.S. General Maritime Law in damages for harm resulting in whole or in part from the negligent failure of its officers, agents, or employees to make provision of prompt and adequate maintenance and cure. Defendant Princess is liable for damages under the U.S. General Maritime Law if it fails to provide or pay a seaman prompt and adequate maintenance or fails to provide prompt and adequate maintenance and cure. Defendant, Princess is liable for even greater damages if its failure to provide or pay a seaman prompt and adequate maintenance or failure to provide prompt and adequate cure is willful, arbitrary, capricious, and in callous disregard of the rights of a seaman. Furthermore, Defendant Princess is liable if there was negligence in the ministration – essentially the act of supplying or furnishing – of maintenance and cure. There are, indeed, two alternative ways in which an employer is liable for negligence in the ministration of maintenance and cure: (1) If the Defendant was negligent in selecting and/or relying upon one or more of the physicians and health care providers who treated the seaman; or (2) one or more of the physicians and health care providers in who treated the seaman was/were negligent in the treatment of the seaman. Relative to the second of these ways, Defendant DCL is liable for acts of negligence by any of said physicians and health care providers if any of said physicians or health care providers did not exercise the degree of care and skill of the averaged qualified practitioner of the art and science of medicine. Here, Defendant's shipboard physicians as well as the shoreside physicians Defendant referred Plaintiff to in Bermuda and Southampton breached the standard of care of the average qualified practitioner of the art and science of medicine by failing to diagnose and/or treat and/or timely refer Plaintiff to a qualified medical expert for diagnosis and adequate medical treatment to Plaintiff, inasmuch as Plaintiff was kept aboard the

vessel and treated with pain medicines instead of providing him the required course of medical treatment which caused an aggravation of all his injuries.

59.     Defendant's shipboard and the shoreside physicians Plaintiff was referred to by Defendant in Bermuda and Southampton breached the standard of care and skill of the averaged qualified practitioner of the art and science of medicine and thus failed to provide Plaintiff with prompt and adequate maintenance and cure, including, without limitation as follows:

a.      by negligently and/or grossly negligently failing to possess the requisite knowledge, training, or experience to adequately diagnose and treat Plaintiff's medical conditions.

b.      by negligently and/or grossly negligently failing to timely refer Plaintiff to undergo proper diagnostic tests, or to recommend that further tests be performed based on the unresolved complaints of back and wrist pains; and/or

c.      by negligently and/or grossly negligently failing to follow appropriate guidelines concerning care and supervision of a crewmember in Plaintiff's condition; and/or

d.      Failing to obtain proper physical examinations on the Plaintiff.

e.      by negligently and/or grossly negligently failing to provide and/or recommend adequate follow-up care to Plaintiff; and/or

    a.      by negligently and/or grossly negligently failing to consult with other physicians or health care providers in regard to the care and treatment rendered to Plaintiff, including as to appropriate evaluation and diagnosis; and/or

    b.      by negligently and/or grossly negligently failing to prescribe, order, and/or perform indicated diagnostic procedures that would have revealed

Plaintiff's true condition and dictated a different course of care and treatment for Plaintiff's; and/or

c.   by negligently and/or grossly negligently failing to request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures to prevent the condition from remaining untreated and allowing it to worsen; and/or

d.   by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

e.   by negligently and/or grossly negligently relying on physicians lacking or possessing the requisite knowledge, training, or experience to adequately diagnose and/or treat Plaintiff's medical conditions and negligently /or grossly negligently failing to timely refer Plaintiff to undergo proper diagnostic tests, or to recommend that further tests be performed based on the continued steady decline of Plaintiff's neurological and urological condition following the April 23, 2020 accident aboard the lifeboat

f.   by negligently and/or grossly negligently failing to follow appropriate guidelines concerning the care and medical supervision of a crewmember in Plaintiff's condition; and/or

g.   failing to conduct proper physical examinations on the Plaintiff and/or

h.   by negligently and/or grossly negligently failing to timely provide Plaintiff emergency medical care and treatment and/or recommend

i.  adequate follow-up medical care to Plaintiff; and/or by negligently and/or grossly negligently failing to consult with other specialized physicians or health care providers regarding the care and treatment rendered to Plaintiff, including as to appropriate evaluation and diagnosis; and/or

j.  by negligently and/or grossly negligently failing to air vac Plaintiff from the vessel to a facility in South Florida specializing in spine injures and paralysis

k.  by negligently and/or grossly negligently failing to airlift Plaintiff from the vessel to any facility on the west side of the Atlantic which specializes in spinal injuries and paralysis and/or negligently and/or grossly negligently failing to airlift Plaintiff from Bermuda to his home country to receive emergency care and treatment and/or

l.  by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

60.  As a direct and proximate result, Plaintiff suffered harm, including, without limitation, bodily injury, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and/or treatment, loss of earnings, loss of ability to earn money, loss of ability to obtain proper health insurance and/or aggravation of a previously existing condition. One or more of the losses are permanent and/or continuing, and Plaintiff will suffer the loss(es) in the future.

**WHEREFORE,** the Plaintiff demands judgment under the U.S. General Maritime law against the Defendant, Princess Cruise Lines, Ltd. together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

**COUNT V**
**PRINCESS CRUISE LINES, LTD**
**UNSEAWORTHINESS**

Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein, and further

alleges:

61.  Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea. The shipowner's duty is breached when a condition of the vessel, temporary or permanent, renders the vessel not reasonably fit for its intended use or service. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960).

62.  Liability under the doctrine of unseaworthiness is not dependent upon the shipowner's actual or constructive knowledge of an unseaworthy condition, nor does liability depend upon fault. In addition, the shipowner's duty to furnish a seaworthy vessel is completely independent of his duty to exercise reasonable care under the Jones Act. The duty to provide a seaworthy vessel is not mitigated or discharged by the exercise of reasonable care or due diligence.

Furthermore, the shipowner's warranty of seaworthiness extends to the vessel's crew and appurtenances. The shipowner breaches this duty by manning the vessel with an unfit, incompetent, inadequate, defective, or improperly trained or supervised crew. A condition of a crew member (or a group thereof) rendering him (1) not fit for his ordinary duties or

(2) not up to the ordinary standards of his profession is an unseaworthy condition sufficient to warrant the imposition of liability on the shipowner. *Wagon Dixon v. Royal Caribbean Cruises, Ltd.*, 679 So. 2d 811 (Fl 3rd DCA 1996).

63.     Defendant PRINCESS had the absolute, non-delegable duty to provide Plaintiff with seaworthy vessel.

64.     Defendant breached its duty to maintain its vessel in a seaworthy condition and said breach was a legal cause of injury and damage to Plaintiff by reason of one or more of the following:

   a.     The vessels did not have a reasonably fit shipboard medical crew; and/or the shipboard medical crew was incompetent and/or not reasonably fit for their ordinary duties as shipboard physicians and/or not up to the ordinary standards of their profession as shipboard physicians

   b.     The vessel's medical crew failed to follow proper medical treatment protocols and were overworked and understaffed and required to work such long hours and/or under such horrendous conditions, to the point of being exhausted and/or incapable of appreciating the signs and symptoms of Plaintiff's true medical condition and/or they were not physically fit to carry out their duties and/or their bodies and minds were fatigued rendering them unfit to serve as a medical providers.

65.     As a direct and proximate result, Plaintiff suffered harm, including, without limitation, bodily injury, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and/or treatment, loss of earnings, loss of ability to earn money, loss of ability to obtain proper health insurance and/or aggravation of a previously existing

condition. One or more of the losses are permanent and/or continuing, and Plaintiff will suffer the loss(es) in the future.

## COUNT VI
## PRINCESS CRUISE LINES, LTD
## NEGLIGENCE -US GENRAL MARITIME LAW

Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein, and further

alleges:

66.   Under General Maritime Law an owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case. This standard of duty extends to passengers, invites or licensees. *Kermarec v. Compagnie Generale Translatlantique*, 358 US 625 (1959

67.   At all times material hereto, Plaintiff was an invitee aboard Defendant Princess Cruise Lines, Ltd.'s vessel Regal Empress. Accordingly, Defendant owed Plaintiff the duty of reasonable ordinary care under the circumstances.

68.   Negligence is an actionable wrong under general maritime law, and the elements of that tort are essentially the same as land-based negligence under the common law. To state a claim for relief under maritime law, the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiffs injury. Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances. Id.

69. Defendant breached its duty of exercising reasonable care under the circumstances for the health, care, safety, and wellbeing of the Plaintiff while he was aboard Defendant's vessel.

70. At all times material hereto, Defendant was aware that Plaintiff's neurological damages were becoming increasingly worse each day after first reporting his accident and injuries on April 24, 2020.

71. The reasonable standard of care required Princess to air vac or emergency medically disembark Plaintiff and get him to a Level 1 trauma center where qualified medical doctors specializing in spinal injuries and treatment of cauda equina syndrome type injuries would be available to treat Plaintiff.

72. Instead of disembarking Plaintiff on medical emergency grounds, Defendant kept Plaintiff aboard the vessel and pumped him with morphine for ten more days while crossing the Atlantic and reaching Southampton, UK.

73. In the maritime tort context, the determination of the existence and scope of a duty is determined by the foreseeability of the harm suffered by the complaining party. In re Great Lakes Dredge & Dock Co, LLC, 624 F3d 211 (5th Cir 2012)

74. The aggravation of neurological injuries leading to permanent paraplegia and permanent urinary and fecal incontinence was a foreseeable consequence of the delay in getting Plaintiff the medical treatment Plaintiff he required.

75. As a direct and proximate result of Defendant's delay in providing Plaintiff the emergency treatment and surgery he required, Plaintiff suffered additional harm, including, without limitation, bodily injury, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and/or treatment, loss of earnings, loss of ability to earn

money, loss of ability to obtain proper health insurance and/or aggravation of a previously existing condition. One or more of the losses are permanent and/or continuing, and Plaintiff will suffer the loss(es) in the future.

**WHEREFORE**, Plaintiff demands judgment against the Defendant together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants HAL Maritime Ltd., and Princess Cruise Lines, Ltd. together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

DATED THIS 22nd day of June 2020

Respectfully submitted,

/s Julio J.Ayala, Esq

Crewmember & Maritime Advocacy Center
113 Almeria Ave,
Coral Gables, Florida 33134
Telephone: (305) 374-9099
Facsimile: (305) 374-5099
Julio J. Ayala, Esq.
Florida Bar No. 0977070
crewesq@crewadvocacy.com