## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-22911-BLOOM/Louis

ANTONIO SISCA,

      Plaintiff,

v.

HAL MARITIME, LTD. *et al.*,

      Defendants.

_____/

### <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court upon Defendants Hal Maritime, Ltd. ("Hal") and Princess Cruise Lines, Ltd.'s ("Princess") (collectively, "Defendants") Motion to Compel Arbitration, ECF No. [4] ("Defendants' Motion") and Plaintiff's Motion to Remand, ECF No. [16] ("Plaintiff's Motion") (collectively, "Motions"). The Court has considered the Motions, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is granted in part and denied in part, and Plaintiff's Motion is granted in part and denied in part.

### I.      BACKGROUND

Plaintiff initially filed his Complaint in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Defendants on June 22, 2020, ECF No. [1-2]. Defendants removed the case to this Court on July 14, 2020, pursuant to 9 U.S.C. § 202 *et seq.* and 28 U.S.C. § 1441. ECF No. [1] at 5.

According to the Complaint, Plaintiff, an Italian national, was a seaman on the *M/V Vendaam* (the "Vessel") and was employed by Hal as a "cast member" aboard the Vessel. ECF

No. [1-2] at ¶¶ 5-6. His employment contract with Hal commenced on July 26, 2019 and expired on April 22, 2020. *Id.* at ¶¶ 10, 14, 23. On March 14, 2020, the United States announced a no sail order for cruise ships due to the COVID-19 pandemic, *id.* at ¶16. However, Hal refused to disembark Plaintiff and repatriate him to Italy until April 23, 2020. *Id.* at ¶¶ 17-19.

On April 23, 2020, the Vessel began deploying lifeboats to transfer European crewmembers to Princess' *Regal Princess* vessel to repatriate to Europe. *Id.* at ¶ 24. Due to high winds and rough sea conditions, the lifeboats violently rolled from side to side while sea water from the crashing waves sloshed inside the lifeboats. *Id.* at ¶ 25. Plaintiff asserts that while in transit to the *Regal Princess* from the Vessel on April 23, 2020, he slipped twice and violently fell on his lower back. *Id.* at ¶ 26. Plaintiff reported his injuries to the *Regal Princess*' doctors, yet he was only given pain medication. *Id.* at ¶ 27. Over the ensuing days while on a transatlantic voyage, Plaintiff's pain progressively worsened, and he was kept aboard the *Regal Princess* even though physicians recommended that he be seen by an orthopedic spine specialist. *Id.* at ¶¶ 28-34. According to Plaintiff, by the time the *Regal Princess* arrived in Europe on May 5, 2020, he had become paraplegic. *Id.* at ¶ 36. Upon arrival in Italy on May 9, 2020, he was admitted for emergency spinal surgery and diagnosed with cauda equina syndrome. *Id.* at ¶ 40. He underwent back surgery on May 10, 2020, and post-operatively he remains wheelchair-bound in a paraplegic state and is unable to control his bladder or bowel movements. *Id.* at ¶¶ 42-43.

The Complaint alleges six counts, three against each Defendant. Specifically, as to Hal, Plaintiff brings claims for Jones Act negligence (Count I); Jones Act negligence for failure to provide prompt and adequate medical treatment (Count II); and failure to provide prompt and adequate maintenance and cure (Count III). As to Princess, Plaintiff asserts claims for failure to provide prompt and adequate maintenance and cure (Count IV); unseaworthiness (Count V), and

negligence (Count VI).

Defendants now move to compel arbitration of the instant claims in accordance with the terms of the Seagoing Employment Agreement, May 2019 version, ECF Nos. [1-3] and [1-5] ("Employment Agreement"). In particular, the Employment Agreement provides that disputes are to be arbitrated in Italy, Plaintiff's country of citizenship, under the laws of the British Virgin Islands:

> Arbitration: Any disputes whatsoever relating to or in any way arising out of this Agreement or your service on board a ship, including but not limited to wage disputes, property damage, personal injury, death or any other claim, shall be governed exclusively by the laws specified in the applicable Collective Bargaining Agreement or government-mandated contract. In the absence of any such Agreement or specification, such disputes shall be governed in all respects by the Laws of the British Virgin Islands. You hereby agree, on behalf of yourself and your successors, assigns, heirs, dependents or representative, that any disputes shall be arbitrated, if at all, exclusively according to the terms specified in any applicable Collective Bargaining Agreement or government-mandated contract. In the absence of such Agreement, terms or contract, all such disputes no matter how described, pleaded or styled, shall be resolved by binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S. 3, 1970 U.S.T. LEXIS 115, exclusively in your country of citizenship or, if your home country is not a party to the Convention, then in Seattle, Washington.

> ECF No. [1-5] at Art. 18B (emphasis omitted).[1]

According to Defendants, the Complaint's allegations "clearly fall within the agreement to

---

[1] The Employment Agreement also contains a "monthly rate" signature page listing Plaintiff's "sign-off date" as April 22, 2020 and stating the following:

> The terms and conditions attached hereto (May 1, 2019) apply to, and are an integral part of, this Agreement. By signing below, you acknowledge that you have been afforded the opportunity to review the terms and conditions . . . You specifically acknowledge that you have read and agree to the arbitration provision contained in Article 18B and the Privacy Notice/Acknowledgement contained in Article 20 of the terms and conditions.

ECF No. [1-3] (capitalization altered).

arbitrate made between the parties." ECF No. [4] at 3. They make four general arguments. First, the United States Court of Appeals for the Eleventh Circuit "has clearly established that crewmember cases should be compelled to arbitration" under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"); second, federal law favors arbitration; third, the four jurisdictional prerequisites to compel arbitration under the Convention are satisfied; and fourth, courts within this district compel arbitration under similar circumstances. *Id.* at 4-7. Defendants seek an order dismissing the instant action and compelling arbitration in Italy.

      Plaintiff responds that the arbitration agreement does not apply because he sustained his injuries one day *after* the Employment Agreement expired by its own terms. ECF No. [15] at 2. Additionally, even were that not so, the Employment Agreement's terms and conditions are not triggered because Plaintiff's claims arose when he was not "in active service sailing on a ship in an officer or crewmember capacity" but rather while he was on "leave" and/or "in transit to or from" a ship. *Id.* (quoting ECF No. [1-5], Art. 1A).[2] In Plaintiff's view, there was no written agreement to arbitrate under the facts of this case, and thus, the jurisdictional prerequisites under the Convention are not met. *Id.* at 10-13. Moreover, Plaintiff claims that the arbitration clause did not survive expiration of the Employment Agreement. ECF No. [25] at 5. Plaintiff further argues that Defendants' Motion as to Princess must be denied because Princess was not a signatory to the

---

[2] The Employment Agreement provides that the "terms and conditions of this Seagoing Employment Agreement (SEA) extend to any period in which you are in active service sailing on a ship in an officer or crewmember capacity (the Employment Term). Although leave period must be approved and agreed to by us, you are not in the service of us or any of the ships owned by our affiliates during leave periods or while you are in transit to or from any ship (except as to medical care as provided in Article 8 and for the purpose of a ship substitution as set forth in Article 21.E.)." *Id.* Additionally, the Employment Agreement states that the "time between sailing assignments is considered leave" and that "you are not in the service of us or any ship owned by any of our affiliates during such leave periods." *Id.* at Art. 6G.

Employment Agreement and no other written agreement exists between Plaintiff and Princess. ECF No. [16] at 2-3, 13-16; ECF No [25] at 8-10. Plaintiff contends, relatedly, that remand to state court of all claims raised in the Complaint is appropriate because the Court lacks federal jurisdiction over this matter. *See* ECF Nos. [16] and [25].

Defendants reply that "Plaintiff is losing sight of the forest for the trees" because the arbitration agreement language is "more expansive and broader than other provisions" contained in the Employment Agreement, and it survives expiration of the Employment Agreement. ECF No. [23] at 2. Accordingly, they submit that the jurisdictional prerequisites under the Convention are satisfied. Defendants add that Plaintiff "is trying to have it two ways" in that he claims he was not employed at the time of his injuries, but he nonetheless asserts causes of action that are available only to seamen. *Id.* at 4-6. Defendants maintain that claims against Princess arise out of the Employment Agreement and are subject to arbitration under the doctrine of equitable estoppel. *Id.* at 7-9; *see also* ECF No. [24].

The Motions, accordingly, are ripe for consideration.

## II.     LEGAL STANDARD

The Convention requires courts of signatory nations, such as the United States, to give effect to private arbitration agreements and to enforce arbitral awards made in signatory nations. United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. I(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3; *see also Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.*, 631 F. App'x 714, 715-16 (11th Cir. 2015). The United States enforces its agreement to the Convention's terms through Chapter 2 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 201-208.

In ruling on a motion to enforce an arbitration agreement under the Convention, a district court conducts a "very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002)). As a threshold matter, "[u]nder both the FAA and the Convention 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' it." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). In other words, "the parties will not be required to arbitrate when they have not agreed to do so." *Id.* at 1214 (quoting *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir. 1990)).

Beyond that threshold consideration, an arbitration agreement is governed by the Convention if four jurisdictional prerequisites are met: (1) the agreement is "in writing within the meaning of the Convention;" (2) "the agreement provides for arbitration in the territory of a signatory of the Convention" (3) "the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial;" and (4) one of the parties to the agreement is not an American citizen. *Bautista*, 396 F.3d at 1294 n.7. If the agreement satisfies those jurisdictional prerequisites, the district court must order arbitration unless any of the Convention's affirmative defenses apply. *Id.* at 1294-95. "That is, arbitration is mandatory unless the plaintiff proves that the agreement is 'null and void, inoperative or incapable of being enforced.'" *Azevedo v. Carnival Corp.*, No. 08-CIV-20518, 2008 WL 2261195, at *3 (S.D. Fla. May 30, 2008) (citation omitted).

Moreover, "[t]he party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Sims v. Clarendon Nat'l Ins.*

*Co.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004). "This burden is not unlike that of a party seeking summary judgment," and therefore "the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support its contention." *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Bautista*, 396 F.3d at 1295 ("the Convention Act 'generally establishes a strong presumption in favor of arbitration of international commercial disputes'") (citation omitted).

Through this lens, the Court considers the Motions and the parties' arguments.

## III.    DISCUSSION

Determining whether Defendants are entitled to the relief they request raises four overarching issues. First, whether the Court can compel arbitration of the claims against Princess given the absence of an independent written arbitration agreement between it and Plaintiff. Second, whether the underlying disputes in this case are subject to arbitration. Third, if so, whether the four jurisdictional requirements of the Convention have been satisfied. Finally, if the Court compels arbitration, whether the case should be stayed or dismissed. The Court will address each issue in turn.

The Court will address each issue in turn.

### A.    The Court cannot compel arbitration of claims against Princess

Defendants have produced a written arbitration agreement between Plaintiff and Hal but have not produced any similar agreement between Plaintiff and Princess. Accordingly, Princess seeks to compel arbitration of the instant claims against it by tethering Hal's Employment

Agreement to Plaintiff's claims under the doctrine of equitable estoppel. ECF Nos. [23] at 7-9; [24] at 2-3 ("Here, all of Plaintiff's claims against Princess make reference to and presume the existence of the employment relationship contractually set forth in the SEA. Plaintiff cannot rely on the SEA for his seaman status to raise his Jones Act, Unseaworthiness, and Failure to Provide Prompt and Adequate Medical Care claims while simultaneously repudiating the arbitration clause. Equitable estoppel therefore makes arbitration of Princess' claims appropriate, especially in light of the broad language of the arbitration provision at issue."). Plaintiff asserts that Princess is not a party to the Employment Agreement,[3] and Princess has otherwise failed to carry its burden to establish that the equitable estoppel doctrine applies. ECF Nos. [15] at 13-16; [16] at 8-9; [25] at 8-10. Upon consideration, the Court agrees with Plaintiff that Princess has not shown that the doctrine of equitable estoppel applies in this case.

Generally, "one who is not a party to an agreement cannot enforce its terms against one who is a party" because the "right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson v. Life of the S. Ins.*

---

[3] Princess maintains that "Plaintiff acknowledges Princess and HAL as employers at the time of the incident." ECF No. [23] at 7. It adds that Hal and Princess are "sister companies, owned by Carnival Corporation." *Id.* However, the Employment Agreement demonstrates that it was entered into only between Plaintiff and Hal, not Princess. ECF Nos. [1-3] ("This SEAGOING EMPLOYMENT AGREEMENT (SEA) is made by and between the person named below (Employee or you) and HAL MARITIME LTD. (Company/Employer, we or us) . . . regarding Employee's work on board one or more ships owned by Company's legal affiliates, HAL Antillen N.V. and/or HAL Nederland N.V."). And to be clear, Plaintiff expressly disavows that Princess was his "employer or otherwise ever had any written agreement to arbitrate with him." ECF No. [15] at 2 n.1 (citing ECF No. [7-1] at 85, 87-90). Further, while Princess asserts that Articles 21C and 21E of the Employment Agreement authorize transferring crewmembers to different ships with the Employment Agreement remaining in full force and effect, ECF No. [23] at 7, that does not mean that Princess becomes a party to the Employment Agreement in the event of a transfer. Instead, it means that the Employment Agreement remains effective, pursuant to those clauses, if Plaintiff is transferred to another vessel. Regardless, the Complaint alleges that the Employment Agreement expired before Plaintiff's claims arose, and Princess fail to cite any provision establishing that it became a contracting party.

*Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011). However, "a nonparty may force arbitration if the relevant state contract law allows him to enforce the agreement to arbitrate." *Id.* at 1170 (citation and internal quotation marks omitted). As a result, the "issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force a signatory to arbitrate a dispute between them is controlled by state law." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017); *see also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1648, 207 L. Ed. 2d 1 (2020) (acknowledging that arbitration agreements may be enforced by non-signatories).

This Court and another court within this district have denied motions to compel arbitration under the Convention predicated on equitable estoppel theories. *See Wexler v. Solemates Marine, Ltd.*, No. 16-CV-62704, 2017 WL 979212, at *4-5 (S.D. Fla. Mar. 14, 2017); *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1361-62 (S.D. Fla. 2017). In each case, the courts reasoned that the non-signatory defendant failed to demonstrate that the law of the applicable jurisdiction (here, the British Virgin Islands) recognized equitable estoppel. *See Wexler*, 2017 WL 979212, at *4 ("[P]ursuant to the Supreme Court's decision in *Carlisle*, 'state law provides the rule of decision' on whether a nonparty can enforce an arbitration clause against a party. Here, Solemates Marine makes no indication whatsoever that the contract law of the Cayman Islands—which the parties agree govern in this case—recognizes the equitable estoppel doctrine in this context. This is significant as Solemates Marine bears the initial burden to show that an agreement to arbitrate exists.") (internal citation omitted); *Haasbroek*, 286 F. Supp. 3d at 1361-62 ("The law of the Bahamas governs the SEA and the Arbitration Clause therein. Accordingly, for purposes of determining whether a non-party could enforce the Arbitration Clause, the Court must apply the law of the Bahamas. However, the Moving

Defendants make 'no indication whatsoever that the contract law' of the Bahamas 'recognizes the equitable estoppel doctrine in this context.' In *Wexler*, this Court denied a defendant's motion to compel arbitration premised on a theory of equitable estoppel because that defendant failed to argue that the law of the applicable jurisdiction (the Cayman Islands) recognized equitable estoppel. The *Wexler* Court found this omission 'significant' because that defendant had the burden of showing that an agreement compels the arbitration of the claims against it. For the same reasons, the Court finds that the Moving Defendants have failed to satisfy their burden here: the Moving Defendants have not shown that, under the laws of the Bahamas, equitable estoppel would permit non-signatory Princess to enforce the arbitration clause.") (internal citations omitted).

Like defendants in *Wexler* and *Haasbroek*, Princess makes no showing that British Virgin Islands law recognizes the equitable estoppel doctrine in this context, much less that it would apply in Princess' favor. Accordingly, Princess has not carried its burden to show that, as a non-signatory, Princess can enforce the Employment Agreement against Plaintiff. Therefore, "[Princess] is unable to satisfy the first jurisdictional element of *Bautista*—i.e., 'the existence of an agreement in writing within the meaning of the Convention to arbitrate the dispute at issue[.]'" *Wexler*, 2017 WL 979212, at *5. The Court, consequently, denies the motion to compel arbitration of the claims against Princess pursuant to the Convention, and remand of those claims is proper. *Id.*

## B.    The claims against Hal are subject to arbitration

The crux of Plaintiff's argument is that arbitration cannot be compelled under the Employment Agreement because his personal injury claims arose *after* the Employment Agreement expired by its own terms. Moreover, even if it did not expire, the Employment Agreement was not triggered given that Plaintiff was on leave and not in active service on April

23, 2020. ECF Nos. [15] at 6-13; [16] at 2; [25] at 1-5. Hal, by contrast, maintains that the Employment Agreement's arbitration clause survives termination and that Plaintiff "admits" he was an employee and thus subject to the Employment Agreement. ECF Nos. [23] at 2-7; [24]. Upon consideration, the Court agrees with Defendant that the claims against Hal are subject to arbitration.

"Under both the FAA and the Convention, 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' it." *Doe*, 657 F.3d at 1213 n.9. In determining the scope of an agreement, the Court must "look first to whether the parties agreed to arbitrate a dispute" rather than to general policy goals. *Id.* at 1214. Courts are "not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Id.* (citation omitted). That means "the parties will not be required to arbitrate when they have not agreed to do so," because arbitration "is a matter of consent, not coercion." *Id.* (citation omitted). Simply put, "[b]ecause arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." *Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) (citing *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002) ("We will compel no arbitration of issues that are outside an agreement to arbitrate.")).

Here, the Complaint alleges that Plaintiff's employment contract with Hal expired on April 22, 2020. ECF No. [1-2] at ¶¶ 10, 14, 23. The Employment Agreement "monthly rate" page, ECF No. [1-3], further reflects that Plaintiff's sign-off date was April 22, 2020. Neither party claims that a new employment agreement was entered into after that date. According to the Complaint, Plaintiff's injuries occurred on April 23, 2020 while he was in transit from the Vessel to the *Regal*

*Princess* via a lifeboat that was experiencing rough sea conditions. *See* ECF No. [1-2] at ¶¶ 14-15, 24-26. This injury took the form of a slip and fall while assisting another individual aboard the lifeboat. *Id.* at ¶ 26. Following that event, despite Plaintiff's intensifying pain and worsening medical conditions, allegedly he was not given proper medical treatment, and he remains paraplegic. *Id.* at ¶¶ 27-43.

In Plaintiff's view, the Employment Agreement's arbitration provision is inapplicable because the underlying disputes do not "relat[e] to or in any way aris[e] out of this Agreement or your service on board a ship[.]" ECF No. [15] at 7. Specifically, he maintains that on April 23, 2020, he was not in "active service" in a "crewmember capacity," he was on "leave," and "in transit," which causes the disputes to be outside the Employment Agreement's scope. *Id.* at 8, 11-12 (citing ECF No. [1-5] at Arts. 1A and 6G)). However, at the same time, the arbitration agreement applies to "all such disputes no matter how described, pleaded or styled." ECF No. [1-5] at Art. 18B. But more importantly, the Complaint itself alleges causes of actions that "relate to or in any way arise out of the Employment Agreement" or Plaintiff's "service on board a ship." In particular, as to Hal, Plaintiff alleges two counts for Jones Act negligence and one count for maintenance and cure. ECF No. [1-2] at 9-17. The Eleventh Circuit has explained that these causes of action would not be viable "but for" a seaman's service on a vessel, and thus, are subject to arbitration even where the dispute allegedly arises after the seaman's employment terminates. *See Montero v. Carnival Corp.*, 523 F. App'x 623, 627-28 (11th Cir. 2013) ("But for Montero's service on the vessel, none of those claims [for Jones Act negligence, unseaworthiness, and maintenance and cure] would have been viable. Because none of Montero's claims would be viable if he had

not served as an employee on one of Carnival's ships, this dispute arises out of his service on the vessel and falls within the scope of the arbitration clause.") (internal citations omitted).[4]

And, to be sure, an employment agreement's termination does not automatically mean that an arbitration agreement is inapplicable. In fact, this Court and others have determined that disputes under similar broadly worded arbitration agreements are subject to arbitration even though plaintiffs, like Plaintiff here, argued that the employment agreement had terminated and thus the arbitration clauses did not apply. *See Montero*, 523 F. App'x at 627 (rejecting argument that "arbitration is not required if an employee brings a claim after the employment contract terminates" because it "would contradict the arbitration clause's broad language, as well as the Convention's policy in favor of arbitration," and compelling arbitration where agreement required arbitration of "any and all disputes arising out of . . . Seafarer's service on the vessel"); *Bendlis v. NCL (Bahamas), Ltd.*, 112 F. Supp. 3d 1339, 1345-46 (S.D. Fla. 2015) (explaining that arbitration clause stating that "any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with the Company . . . shall be referred to and resolved exclusively by binding arbitration" is "broad language" that "suggests" the parties "intended for the arbitration clause to survive expiration"); *Isanto v. Royal Caribbean Cruises, Ltd.*, No. 20-cv-23715, 2020 WL 6262981, at *7 (S.D. Fla. Oct. 23, 2020) (compelling

---

[4] Further supporting Defendant's argument that the claims are subject to arbitration, the Complaint alleges that "[a]t all times material" Plaintiff was a "Jones Act seaman" and that Hal was "Plaintiff's Jones Act employer." ECF No. [1-2] at ¶ 6. *See* 46 U.S.C. § 30104 (Jones Act claims apply to a "seaman injured in the course of employment"). Additionally, although Plaintiff argues that his rights to repatriation and to receive medical treatment arise independently of the Employment Agreement pursuant to the Maritime Labour Convention ("MLC 2006"), ECF No. [15] at 12 n.4, as Hal correctly points out, the MLC 2006 applies only to "seafarers," which is defined as "any person who is employed or engaged or works in any capacity on board a ship to which this Convention applies." *See* ECF No. 23] at 7 n.8 (citing MLC 2006 at Arts. 2.1.f and 2.2). The MLC 2006, therefore, does not support Plaintiff's arguments that his claims fall beyond the scope of the arbitration provision.

arbitration and noting that allegation that crewmember's employment had terminated before disputes arose "is not dispositive of whether the action is subject to arbitration").

The arbitration agreement here is consistent with the arbitration agreements in *Montero*, *Bendlis*, and *Isanto*. Accordingly, the Court concludes that the first *Bautista* prong is satisfied. Because Plaintiff does not contest the remaining three prongs of *Bautista*, which the Court likewise concludes are present, Hal has demonstrated the four conditions to compel arbitration are satisfied. Hal therefore has carried its initial burden to show that an agreement to arbitrate is subject to the Convention.

### C.     No further defenses apply

To implement the Convention, the "Convention Act provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the New York Convention: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015) (emphasis removed). "These two stages of enforcement are known as (1) the arbitration-enforcement stage and (2) the award-enforcement stage. Only certain defenses can be raised at each stage of enforcement, and the available defenses differ between the arbitration-enforcement stage and the award-enforcement stage." *Id.* (internal citation omitted). At the present arbitration-enforcement stage, the "only" defenses to arbitration are that the arbitration agreement is "null and void, inoperative or incapable of being performed." *Id.* "The null-and-void clause encompasses only those defenses grounded in standard breach-of-contract defenses—such as fraud, mistake, duress, and waiver—that can be applied neutrally before international tribunals."

*Id.* Defenses that the arbitration agreement is unconscionable or that public policy defeats the agreement are premature and not available at this setting. *Id.* at 1287-88.

Having rejected Plaintiff's arguments that the arbitration agreement is inoperative, Plaintiff must demonstrate that other affirmative defenses apply to avoid arbitration. In this respect, he fails to carry his burden because he does not assert that other affirmative defenses apply. Accordingly, the Court concludes that the claims against Hal shall be submitted to binding arbitration in accordance with the arbitration clause in the Employment Agreement.

### D.   Staying the case is proper

The Court next turns to whether the case should be dismissed or stayed. Although some courts within this district have dismissed cases that were submitted to arbitration, this Court has previously stayed proceedings. *See VVG Real Estate Invs. v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1207 (S.D. Fla. 2018) ("Although Defendant moves to dismiss and, in the alternative, stay this action, '[t]he Eleventh Circuit has held that the proper course is to stay the proceedings rather than dismiss the action.' *Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 3:13-CV-576-J-34JRK, 2014 WL 757942, at *11 (M.D. Fla. Feb. 26, 2014) ((citing *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim that is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."))); *Isanto*, 2020 WL 6262981, at *10. Accordingly, this Court will stay the proceedings.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [4]**, is **GRANTED IN PART AND DENIED IN PART**.

Case No. 20-cv-22911-BLOOM/Louis

2. Plaintiff's Motion, **ECF No. [16]**, is **GRANTED IN PART AND DENIED IN PART**.

3. The Court **COMPELS** arbitration as to Plaintiff's claims against Defendant Hal Maritime, Ltd.

4. Plaintiff's claims against Defendant Princess Cruise Lines, Ltd. are **REMANDED** to the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

5. The case is **STAYED** pending completion of the arbitration proceedings. After arbitration has concluded, Plaintiff and Hal shall **FILE** a notice with the Court advising whether the case shall be reopened or dismissed.

6. To the extent no otherwise disposed of, all pending motions are **DENIED AS MOOT**, and any pending deadlines are **TERMINATED**.

7. The Clerk of Court is directed to **CLOSE** this matter for administrative purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 9, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record